UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
--------------------------------------------------------------X

TOWN OF BROOKHAVEN,                                MDL NO.: 2873

                Plaintiff,

    -against-                                     MASTER DOCKET NO.: 2:18-MN-2873

THE 3M COMPANY f/k/a Minnesota Mining and
Manufacturing Co., AGC CHEMICALS
AMERICAS INC., AMEREX CORPORATION,               JUDGE RICHARD GERGEL
ANGUS FIRE ARMOUR CORPORATION,
ARKEMA INC., ARCHROMA MANAGEMENT
LLC, BASF CORPORATION, individually and as       Civil Case No.:  2:21-cv-1528-RMG
successor in interest to Ciba Inc., BUCKEYE FIRE
EQUIPMENT COMPANY, CARRIER GLOBAL
CORPORATION, CHEMDESIGN PRODUCTS
INC., CHEMGUARD INC. CHEMICALS, INC.,
CHUBB FIRE, LTD., CLARIANT
CORPORATION, individually and as successor in    **DIRECT FILED COMPLAINT AND**
interest to Sandoz Chemical Corporation,          **JURY DEMAND PURSUANT TO**
CORTEVA, INC., individually and as successor in   **CASE MANAGEMENT ORDER**
interest to DuPont Chemical Solutions Enterprise, **NO. 3**
DEEPWATER CHEMICALS, INC.,
DOWDUPONT INC., DUPONT DE NEMOURS
INC., individually and as successor in interest to
DuPont Chemical Solutions Enterprise, DYNAS
CORPORATION, E.I. DUPONT DE NEMOURS
AND COMPANY, individually and as successor in
interest to DuPont Chemical Solutions Enterprise,
ENTERRA CORPORATION, KIDDE PLC, INC.,
f/k/a WILLIAMS US INC., f/k/a WILLIAMS
HOLDINGS, INC., individually and as successor in
interest to National Foam Inc., FIRE SERVICE
PLUS, INC., KIDDE-FENWAL, INC., individually
and as successor in interest to Kiddie Fire Fighting,
Inc., NATION FORD CHEMICAL COMPANY,
NATIONAL FOAM INC., THE CHEMOURS
COMPANY, individually and as successor in
interest to DuPont Chemical Solutions Enterprise,
THE CHEMOURS COMPANY FC, LLC,
individually and as successor in interest to DuPont
Chemical Solutions Enterprise, TYCO FIRE
PRODUCTS, LP, individually and as successor in
interest to The Ansul Company, UNITED

{00370101-14}

TECHNOLOGIES CORPORATION, UTC FIRE &
SECURITY AMERICAS CORPORATION, INC.,
f/k/a GE Interlogix, Inc.,

                    Defendants.

-----------------------------------------------------------------X

Plaintiff, TOWN OF BROOKHAVEN, by its attorneys, **Rosenberg Calica & Birney LLP**, for its Complaint herein, alleges:

### Introduction

1.       Plaintiff, Town of Brookhaven ("Town"), a New York municipal corporation and the owner of the Brookhaven Calabro Airport (a 600 acre General Aviation Airport) located in Shirley, County of Suffolk, New York ("Calabro Airport"), brings this environmental damages action against defendants who manufactured, marketed and sold the firefighting product known as "Aqueous Film-Forming Foam" ("AFFF") used to control and extinguish aviation and other flammable liquid fires (the "AFFF Products").

2.       AFFF Products contain two toxic chemical ingredients known as "PFOA" and "PFOS" (collectively, "PFAS") which have been ascertained to leach into the soil and groundwater, resulting in contamination known to have significant adverse health effects on persons, and which are exceedingly difficult and very costly to remediate.

3.       In 2016, the United States Environmental Protection Agency ("EPA") issued a Health Advisory Level ("HAL") of 70 parts per trillion for combined PFOA and PFOS, in July 2020, the New York State Department of Environmental Conservation ("DEC") established a Maximum Contamination Level ("MCL") for PFOA and PFOS of 10 parts per trillion each ("PPT"), and in January 2021, the DEC incorporated these MCL's in its regulatory Guidance for MCL levels for Remedial Programs.

4.      A DEC investigation of Calabro Airport (and other surrounding properties) conducted in June and July 2019 ascertained that PFOA and PFOS contamination in the groundwater beneath Calabro Airport exceeded both the EPA's 2016 Health Advisory Levels and even exceeded the stricter DEC MCL's later adopted on July 30, 2020.

5.      As a result of the DEC investigation: (a) the DEC designated the Calabro Airport site as a "potential" inactive hazardous waste disposal site pursuant to New York Environmental Conservation Law Article 27 (ECL §3-0301); (b) the DEC demanded that the Town undertake an investigation of the PFOA and PFOS contamination levels in the soil and groundwater of Calabro Airport; and (c) the Town entered into with the DEC a limited Order on Consent and Administrative Settlement dated June 18, 2020 (the "Consent Order").

6.      The Consent Order, without admission or acknowledgment of liability on the part of the Town, requires it to undertake an investigation sufficient for the Town to prepare a Site Characterization Work Plan and Site Characterization Report to the DEC, for which the Town has now been required to engage an environmental engineering consultant, PW Grosser Consulting ("PWGC"), whose work is now progressing.

### Prior Town Use of AFFF at Calabro Airport

7.      A total of five accidents or incidents have been recorded with the National Transportation Safety Bureau that are connected to the airport and have resulted in fire on the ground on the following dates:  May 6, 1984; August 3, 1988; November 18, 1998; August 19, 2012 and February 12, 2016.

8.      Upon information and belief, AFFF Products were utilized in connection with the five accidents or incidents resulting in a fire on the ground enumerated above.

9.     AFFF foam has previously been stored in the Terminal Building of the Calabro Airport for firefighting use in small amounts, but not since 2006.

10.     By reason of the foregoing, the Town has and will continue to sustain environmental harm and property damage to Calabro Airport, its soils and groundwater, may incur substantial expenditures in remediating PFOA and PFOS contamination caused by the Defendants, and may become exposed to liability in future actions and lawsuits by others against the Town for which the Town is and will be entitled to damages, indemnification, contribution, declaratory, or other relief from Defendants pursuant to CERCLA, RECRA, and other relevant statutes and principles of law more fully detailed below.

## Jurisdiction and Venue in this Court and District

11.     Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3"). Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Eastern District of New York. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the Eastern District of New York, as the "Home Venue" as this case may have originally been filed there.

12.     Venue is proper in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this action is situated in the judicial district, and a substantial part of the events or omissions giving rise to this action occurred in the judicial district.

13.     This Court and the District Court for the Eastern District of New York have personal jurisdiction over Defendants due to their engaging in substantial and purposeful business activities within the State of New York by designing, manufacturing, marketing, selling and distributing AFFF Products in New York State, including to numerous firefighting customers and others who have utilized such products at Calabro Airport for both firefighting and fire training purposes, as more fully detailed below.

14.     Jurisdiction in this Court is based upon provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") including, without limitation, actions for cost recovery and declaration of liability for cost recovery and contribution under §107(a) of CERCLA (42 U.S.C. §9607(a)) and CERCLA §113(f)(2) (42 U.S.C. §9613(f)), as well as under state and common law principles which this Court is authorized to entertain under its supplemental jurisdiction.

15.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because events and actions upon which the Town's claims are based occurred in substantial part in this judicial district.

### Parties

#### A. The Town and Calabro Airport

16.     Plaintiff, Town of Brookhaven ("Town"), is a municipal corporation organized under the laws of the State of New York with its principal place of business located at 1 Independence Hill, Farmingville, New York.

17.     Calabro Airport was constructed during World War II, was thereafter owned by New York State, and was acquired, owned and has been operated by the Town since 1961, conducting approximately 130,000 aircraft operations annually (over 350 per day), with over 200 aircraft based at the airport, three fixed-based operators ("FBOs") and multiple other tenants.

## B. The AFFF Defendants

18.     The term "AFFF Defendants" refers collectively to Defendants 3M Company, AGC Chemicals Americas Inc., Amerex Corporation, Angus Fire Armour Corporation, Arkema Inc., Archroma Management LLC, BASF Corporation, Buckeye Fire Equipment Company, Carrier Global Corporation, Chemdesign Products, Inc., Chemguard Inc., Chemicals, Inc., Chubb Fire, Ltd., Clariant Corporation, Corteva, Inc., Deepwater Chemicals, Inc., Dowdupont Inc., Depont De Nemours and Company, Dynas Corporation, E.I. Dupont De Nemours and Company, Enterra Corporation, Kidde Plc, Inc. f/k/a Williams US Inc., f/k/a Williams Holdings, Inc., Fire Service Plus, Inc., Kidde-Fenwal, Inc., Nation Ford Chemical Company, National Foam, Inc., the Chemours Company, the Chemours Company FC, LLC,  Tyco Fire Products L.P., United Technologies Corporation, and UTC Fire & Security Americas Corporation, Inc., f/k/a GE Interlogix, Inc.

19.     Upon information and belief, Defendant The 3M Company f/k/a Minnesota Mining and Manufacturing Co. ("3M") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144-1000.

20.     Upon information and belief, since at least 1970 and until at least 2002, 3M designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

21.     Upon information and belief, Defendant Amerex Corporation ("Amerex") is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

22.    Amerex is a manufacturer of firefighting products and, upon information and belief, since 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

23.    Upon information and belief, in 2011, Amerex acquired Solberg Scandinavian AS, a European-based manufacturer of AFFF products.

24.    On information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

25.    Upon information and belief, Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143-2542.

26.    Upon information and belief, Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

27.    Upon information and belief, since 1975, Ansul designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

28.    Upon information and belief, Tyco/Ansul continued to design, manufacture, market, distribute, and sell AFFF products containing PFAS, including but not limited to PFOA and PFOS after 1990.

29.    Upon information and belief, Defendant Chemguard, Inc. ("Chemguard") is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.

30.     Upon information and belief, Chemguard designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

31.     On information and belief, Chemguard was acquired by Tyco International Ltd. in 2011.

32.     Upon information and belief, Defendant Buckeye Fire Equipment Company ("Buckeye") is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

33.     On information and belief, Buckeye designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA and PFOS.

34.     Upon information and belief, Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.

35.     Upon information and belief, since in or about 1973, National Foam designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

36.     On information and belief, National Foam currently manufactures the Angus brand of AFFF products.

37.     On information and belief, National Foam merged with Chubb Fire Ltd. to form Chubb National Foam, Inc. in or around 1988.

38.     On information and belief, defendant Chubb Fire, Ltd. ("Chubb") is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire &

Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. (collectively referred to as "Chubb").

39.    On information and belief, Chubb was acquired by Williams Holdings in 1997.

40.    On information and belief, Angus Fire Armour Corporation had previously been acquired by Williams Holdings in 1994.

41.    On information and belief, Williams Holdings was demerged into Chubb and Kidde P.L.C. in or around 2000.

42.    On information and belief, when Williams Holdings was demerged, Kidde P.L.C. became the successor in interest to National Foam System, Inc. and Angus Fire Armour Corporation.

43.    On information and belief, Kidde P.L.C. was acquired by United Technologies Corporation in or around 2005.

44.    On information and belief, Angus Fire Armour Corporation and National Foam separated from United Technologies Corporation in or around 2013.

45.    Upon information and belief, Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business at One Financial Plaza, Hartford, Connecticut 06101.

46.    On information and belief, Kidde-Fenwal was an operating subsidiary of Kidde P.L.C. and manufactured AFFF following Kidde P.L.C.'s acquisition by United Technologies Corporation.

47.    On information and belief, Kidde-Fenwal is the entity that divested the AFFF business unit now operated by National Foam in 2013.

48.     Upon information and belief, Defendant Carrier Global Corporation ("Carrier") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

49.     On information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business before it merged with Raytheon Company in April 2020.

50.     On information and belief, Kidde-Fenwal became a subsidiary of Carrier when United Technologies Corporation spun off its fire and security business in March 2020.

51.     On information and belief, Archroma Management LLC, BASF Corporation, Chemdesign Products Inc., Chemicals, Inc., Clariant Corporation, Corteva, Inc., Deepwater Chemicals, Inc., Dowdupont Inc., Dupont De Nemours Inc., Dynas Corporation, E.I. Dupont De Nemours and Company, Enterra Corporation, Fire Service Plus, Inc., Nation Ford Chemical Company, The Chemours Company, The Chemours Company FC, LLC, UTC Fire & Security Americas Corporation, Inc., f/k/a GE Interlogix, Inc. are corporations who were involved in the design, manufacture, marketing, distribution, and/or sale of AFFF Products containing PFOS, PFOA, and/or their chemical precursors.

52.     On information and belief, all or some of the AFFF Defendants designed, manufactured, marketed, distributed, and sold AFFF Products containing PFOS, PFOA, and/or their chemical precursors that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at Calabro Airport.

**Factual Allegations**

53.    For most of the past 30 years, the primary manufacturer of PFOS and PFOA has been 3M, through its supply of AFFF.

54.    In the 1960s, 3M and the U.S. Navy began developing Class B AFFF to be used at airports and military bases for firefighting and explosion drills. AFFF was created to extinguish Class B fires, which are fueled by flammable liquid, and particularly difficult to fight using traditional methods of extinguishing fires. Class B fires cannot be safely extinguished with water.

55.    For decades, AFFF foam users did not know of PFOA and/or PFOS existence in AFFF, and used AFFF foam as instructed by spraying AFFF foam directly on the ground during fire training exercises. The use of AFFF to extinguish fires allowed PFOS and PFOA to escape into the ground and migrate to surrounding public and private drinking wells.

56.    Defendants had known of these health and environmental hazards for years.

57.    3M began conducting medical studies on PFOA in the early 1960s. In 1981, 3M researchers found that ingestion of PFOA caused birth defects in rats but continued manufacturing the chemical and failed to disclose the study results.

58.    By the mid-1980s, 3M began a major program to review the handling of fluorochemicals and determined that fluorochemicals could bioaccumulate.

59.    By at least 1993, the AFFF Defendants were aware that PFOA was linked to increased cancer rates in PFOA-exposed humans.

60.    On May 16, 2000, 3M announced that it would phase out production of PFOS and PFOA. On the day of 3M's phase out announcement, an EPA internal memo stated: "*3M data supplied to EPA indicated that these chemicals are very persistent in the environment, have a*

*strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term… [PFOS] appears to combine Persistence, Bioaccumulation, and Toxicity property to an extraordinary degree.*"[1]

61.    In response to pressure from the EPA, 3M began to phase out production of PFOS and PFOA products in 2000[2].  On May 16, 2000, 3M issued a news release falsely asserting that "*our products are safe*", citing the company's "*principles of responsible environmental management*" as the reason to cease production.[3]

62.    In 2002, 3M completed its phase out of PFOS-based AFFF.

63.    AFFF can be manufactured by means and using contents which do not include PFOA and PFOS and are currently manufactured by 3M, the other defendants, and by other manufacturers by means which do not include such substances.

64.    PFOS and PFOA have unique characteristics that cause extensive and persistent environmental contamination, because: (a) they are mobile as they are readily transported through the soil and into groundwater where they can migrate long distances; and (b) they are persistent in that they do not readily biodegrade or chemically degrade in the environment or in eventual treatment systems for drinking water such that they are difficult and costly to remove from soil and groundwater.

---

[1] EPA internal memo, "Phaseout of PFOS" (May 16, 2000) *available at* http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf).

[2] *See* EPA Press Statement re: Phaseout of PFOS (May 16, 2000< *available at* http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0629.pdf; *see also* 3M Sustainability, *Policies & Reports: 3M and Fluorochemicals, available at* http://www.3m.com/3M/en_US/sustainability-us/policies-reports/3m-and-fluorochemicals.

[3] 3M press release, "3M Phasing Out Some Of Its Specialty Materials" (May 16, 2000), *available at* http://www.chemicalindustryarchives.org/dirtysecrets/scotchgard/pdfs/226-0641.pdf.

65.    PFOS and PFOA have also been determined to cause multiple and serious adverse health effects to persons drinking or otherwise exposed to water containing levels of PFOA and PFOS that exceed the MCL's established by the EPA and/or the DEC.

66.    Despite considerable scientific evidence and scientific consensus that exposures of persons to PFOA and PFOS in drinking water in excess of 50 parts per trillion were linked to numerous diseases including cancers, ulcerative colitis, thyroid disease, high cholesterol and other health hazards, the AFFF Defendants repeatedly and falsely represented to governmental entities, customers of AFFF Products and the public (and continue to do so) that such exposure presents no risk of harm and is of no medical significance of any kind.

67.    As more environmental and scientific information and knowledge of the health hazards of PFOS and PFOA became accepted by company's scientific authorities, the EPA established its 70 parts per trillion health advisory level for PFOS and PFOA in May 2016, and numerous States adopted more stringent limits thereafter, including the New York State MCL for each of PFOA and PFOS of 10 parts per trillion in 2020.

## AS AND FOR A FIRST CAUSE OF ACTION
### (CERCLA)

68.    By reason of the matters alleged above, the AFFF Defendants, as manufacturers, sellers, and distributors of AFFF Products, are each an "arranger" of the disposal of hazardous substances onto the Calabro Airport property as defined by CERCLA, §107(a)(3) and each of them did so with actual or imputed knowledge that their product will be leaked, spilled, dumped or otherwise discarded as part of the planned for and intended means of disposal of such AFFF Products then used for actual or practiced firefighting uses at facilities such as Calabro Airport and with the actual intention that it be disposed of in such a manner.

69.     By reason thereof, the Town has and will continue to sustain remedial and response costs (which term as used in this Complaint also includes costs for conducting investigations, implementing cleanups, monitoring and maintaining treatment systems, as well as attorneys fees to the extent applicable), expenses, and damages.

70.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. §9607(a), AFFF Defendants are jointly and severally liable for all remedial and response costs incurred and to be incurred by the Town and its damages.

71.     Plaintiff will continue to incur additional remedial and response costs.

72.     Plaintiff's future costs will be consistent with the National Contingency Plan, 40 C.F.R. Part 300.

73.     In the event of a qualifying settlement §113(f), Plaintiff will be entitled from the AFFF Defendants contribution

74.     Plaintiff is entitled to a declaratory judgment, pursuant to CERCLA Sections 9607(a)(4)(B), 9613(f)(1), and 9613(g)(2) and 28 U.S.C. §2201(a), holding Defendants responsible for all further remedial and response costs or damages that will be incurred by Plaintiff in connection with the above claims, plus costs, expenses, fees and attorneys fees as applicable and that plaintiff is entitled to indemnification or contribution respecting potential claims of others against the Town.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Negligence)

75.     The AFFF Defendants owed, but each breached a duty of care to the Town not to design, develop, manufacture, distribute, market, sell, use and/or allow use of products that was in a defective condition within the Town that were likely to contaminate the Calabro Airport property and its soils and groundwater if used for their ordinary and intended purpose.

76.     The AFFF Defendants acted negligently and in breach of their duty by negligently designing, developing, manufacturing, distributing, marketing, supplying, selling, using and/or allowing use of their products which contain PFOA and PFOS, including its sale and/or distribution to the Town for use at Calabro Airport.

77.     The AFFF Defendants should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFAS compounds, like PFOS and PFOA, would result in the contamination of the Calabro Airport.

78.     Alternatively, the AFFF Defendants owed and breached a duty of care to the Town to warn the Town as an end user of AFFF Products at the Calabro Airport, that they were likely to contaminate the soils and groundwater beneath the property of Calabro Airport.

79.     The AFFF Defendants breaches are the proximate cause of the contamination at the Calabro Airport, its soils and groundwater, and may potentially endanger the surrounding environment and the health of others which are foreseeably likely to cause damages to the Town, all of which was known or should have been known to the AFFF Defendants, as a result of which they are and should be determined to be jointly and severally liable to the Town for compensatory and consequential damages in amounts to be established at trial, plus costs, expenses, fees and attorneys fees as applicable.

## AS AND FOR A THIRD CAUSES OF ACTION
### (Strict Liability – Ultrahazardous Activity)

80.     The AFFF Defendants' design, development, manufacturing, distribution, marketing, supply, sale, use, storage and/or allowance of use of AFFF, containing PFOA and PFOS which are hazardous substances, constituted ultrahazardous activities creating a duty to the Town.

81.    As a result of these ultrahazardous activities and in breach of their duty to the Town, PFOA and PFOS were released into the Calabro Airport soils and groundwater, resulting in damages and harm to the Town.

82.    As a result of the foregoing, the AFFF Defendants are jointly and severally to the Town for compensatory and consequential damages in amounts to be established at trial, plus costs, expenses, fees and attorneys fees as applicable.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Strict Products Liability – Defective Design)**

83.    The AFFF Products design, manufactured, distributed, marketed and sold by the AFFF Defendants presented latent dangers that a reasonable purchaser or end-user such as the Town would not be aware of, which were not reasonably safe in their design, and for which safer alternatives for the manufacturing AFFF Products existed but were not adopted by Defendants.

84.    As a foreseeable result of these activities, the Town sustained damages, including contamination of the soils and groundwater under the Calabro Airport property which Defendants are jointly and severally strictly liable to the Town to the Town for compensatory and consequential damages in amounts to be established at trial, plus costs, expenses, fees and attorneys fees as applicable.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Strict Products Liability – Failure to Warn)**

85.    In addition to the foregoing allegations, the AFFF Defendants further failed to warn users of the latent dangers associated with PFOA and PFOS in their products, including those acquired and used by the Town at Calabro Airport.

86.    As a foreseeable result of these activities, the Town sustained damages, including contamination of the soils and groundwater under the Calabro Airport property for which

Defendants are jointly and severally strictly liable to the Town for the relief sought herein and in amounts to be established at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Public Nuisance)

87.     Plaintiff is a municipality tasked with protecting natural resources, including groundwater, located within its boundaries, under its Town Code and applicable law.

88.     The negligent, reckless, and/or intentional activity of the AFFF Defendants, as alleged herein, has created, contributed to, caused and/or maintained contamination of the soils and groundwater at Calabro Airport within the Town.

89.     The contamination of soils and groundwater at Calabro Airport created, contributed and/or maintained by AFFF Defendants constitutes a substantial interference with a right common to the public to such an extent as to constitute a public nuisance.

90.     The AFFF Defendants knew or should have known that their design, development, manufacturing, distribution, marketing, supply, sale, use, allowance of such use and/or failure to warn were probable to cause injury to the environment and property.

91.     As a result of the foregoing, Defendants are jointly and severally liable to the Town for compensatory and consequential damages in amounts to be established at trial, plus costs, expenses, fees and attorneys fees as applicable.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Private Nuisance)

92.     The Town is the owner and operator of property at the Calabro Airport.  The AFFF Defendants, their agents and employees, knew, or in the existence of reasonable care should have known, that PFOA and PFOS are extremely hazardous to groundwater and potentially to public water systems, including the Town's property.

93.     The AFFF Defendants' intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in contamination of soils and groundwater of the Town's property at the Calabro Airport.

94.     The contamination caused, contributed to, and/or maintained by the AFFF Defendants substantially and unreasonably interferes with Plaintiff's property rights to appropriate, use, and enjoy its property at Calabro Airport.

95.     As a direct and proximate result of the AFFF Defendants' acts and omissions as alleged herein, the Town has incurred, is incurring, and will continue to incur damages related to PFOA and PFOS contamination of  the Calabro Airport in an amount to be proved at trial.

96.     As a result of the foregoing, the AFFF Defendants are jointly and severally liable to the Town for compensatory and consequential damages in amounts to be established at trial, plus costs, expenses, fees and attorneys fees as applicable.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Trespass)**

97.     The Town is the owner and operator of property at Calabro Airport.  The AFFF Defendants, their agents and employees, knew, or in the existence of reasonable care should have known, that PFOA and PFOS are extremely hazardous to groundwater, including the Town's property.

98.     The Town did not give any AFFF Defendant permission to cause PFOA or PFOS to enter its groundwater at the Calabro Airport.

99.     The AFFF Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFOA and PFOS, which the AFFF Defendants knew or reasonably should have known would virtually certainly be discharged and release toxic PFOA and PFOS into the ground and intrude upon, contaminate, and damage the Town's possessory interest.

100.    The AFFF Defendants' willful conduct directly resulted in the placement of its product, AFFF, on and in Calabro Airport property owned by the Town without permission or right of entry.

101.    Each AFFF Defendant is a substantial factor in bringing about the contamination of the Town's property, and each AFFF Defendant aided and abetted the trespasses and is jointly responsible for the injuries and damage caused to the Town.

102.    As a direct and proximate result of the AFFF Defendants' acts and omissions resulting in PFOA and PFOS entering the Town's property, the Town sustained actual injuries and damages related to the PFOA and/or PFOS contamination of the Calabro Airport property.

103.    As a result of the foregoing, the AFFF Defendants are jointly and severally liable to the Town for the relief sought herein and in amounts to be established at trial.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Declaratory Judgment)

104.    An actual controversy has arisen regarding the AFFF Defendants' liability to the Town for the cleanup costs and damages which the Town has and will in the future incur as a result of their forgoing conduct, for the reasons stated in the foregoing Causes of Action.

105.    Moreover, as to future cleanup costs, the AFFF Defendants are obligated to themselves undertake the cleanup, and to reimburse the Town for all of its cleanup and other costs, for the reasons stated in the foregoing Causes of Action.

106.    Pursuant to 28 U.S.C. §2201(a), the Court should issue a declaratory judgment declaring that the AFFF Defendant are jointly and severally liable to the Town for all past and future cleanup and other costs (includes costs for conducting investigations, implementing cleanups, monitoring and maintaining treatment systems, as well as attorneys fees to the extent applicable), expenses, and damages, and are obligated to themselves undertake the cleanup.

## DEMAND FOR JURY

107.    Plaintiff demands a trial by jury of all issues so triable.

WHEREFORE, Plaintiff Town of Brookhaven demands judgment against all the defendants, jointly and severally, as follows:

a.    Granting plaintiff a declaratory judgment, pursuant to CERCLA Sections 9607(a)(4)(B), 9613(f)(1), and 9613(g)(2) and 28 U.S.C. §2201(a), holding Defendants responsible for all further remedial and response costs or damages that will be incurred by Plaintiff in connection with the above claims, plus costs, expenses, fees and attorneys' fees as applicable, and declaring that plaintiff is entitled to indemnification or contribution respecting potential claims against the Town by others;

b.    Adjudging the defendants to be jointly and severally liable to the Town for compensatory and consequential damages in an amount to be established at trial, plus costs, expenses, fees and attorneys' fees as applicable;

c.    Pursuant to 28 U.S.C. §2201(a) the Court should issue a declaratory judgment declaring that the AFFF Defendant are jointly and severally liable to the Town for all past and future cleanup and other costs (includes costs for conducting investigations, implementing cleanups, monitoring and maintaining treatment systems, as well as attorneys fees to the extent applicable), expenses, and damages, and are obligated to themselves undertake the cleanup;

d.    Declaring and determining such other matters and controversies between the Town of Brookhaven and the defendants as may be necessary and appropriate to provide complete relief to the Town of Brookhaven; and

      e.      Granting plaintiff Town of Brookhaven such other and further relief as the

Court may deem appropriate.

Dated:   Garden City, New York
          May 21, 2021

                             **ROSENBERG CALICA & BIRNEY LLP**
*Of Counsel to Brookhaven Town Attorney*
*Annette Eaderesto, Esq., Attorney for*
*Plaintiff, Town of Brookhaven*

By: _____
            Robert M. Calica
100 Garden City Plaza, Suite 408
Garden City, New York 11530
(516) 747-7400